# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| SHATARA NICHOLE EUTSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:19-cv-00594-SRW |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

### I.   Introduction

Plaintiff Shatara Nichole Eutsey commenced this action on August 16, 2019, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability, for disability insurance benefits ("DIB"), and for supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Docs. 1, 12. Plaintiff filed her application on August 18, 2016, alleging that she became disabled on December 31, 2014. Doc. 14-3 at 48, R. 112. Plaintiff's application was denied at the administrative level on December 15, 2016. Doc. 14-3 at 35, R. 99. Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). Docs. 14-2 at 40, R. 39; 14-4 at 12, R. 126. On October 11, 2018, ALJ

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed at the administrative level. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

Kevin Boucher issued an adverse decision after holding a hearing on plaintiff's applications. Doc. 14-2 at 18-33, R. 17-32. On June 17, 2019, the Appeals Council denied plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Doc. 14-2 at 2-4, R. 1-3; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, plaintiff asks the court to reverse the Commissioner's decision and award benefits, or, in the alternative, to remand this cause to the Commissioner for further hearing. Docs. 1 at 2; 12 at 8. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 10, 11. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court will affirm the Commissioner's decision.

## II.    Standard of Review

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted).

The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted merely because the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age,

---

[3]*McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III.    Administrative Proceedings

Plaintiff was 28 years old at the time that she filed her applications for SSI and DIB, and was 30 at the time of the ALJ's decision. *See* Docs. 14-2 at 18, R. 17; 14-6 at 19, R. 255. Plaintiff is a resident of Eufaula, Alabama, and lives with her daughter. *See* Docs. 14-2 at 2, R 43, R. 1, 42; 14-9 at 48, R. 483. She completed the 12th grade. *See* Doc. 14-2 at 44, R. 43.

Plaintiff claims that her ability to work is limited by problems with her back, right wrist, and memory due to tumors, thyroid, right leg issues, and headaches. Doc. 14-7 at 59, R. 333. Plaintiff previously worked as an assembly line food prep worker and vacuum packer at a chicken plant, as a machine operator at the Hyundai plant, and as a cook. Docs. 14-2 at 44-48, R. 43-47; 14-7 at 60, R. 334; 14-10 at 36, R. 570.

Following the administrative hearing, the ALJ found at step one of the five-step process that plaintiff had "not engaged in substantial gainful activity (SGA) since

December 31, 2014, the alleged onset date[.]" Doc. 14-2 at 24, R. 23. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: "fibromyalgia, cubital tunnel syndrome, thyroid issues, obesity2, and borderline intellectual functioning[.]" *Id.* At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id.* Next, the ALJ articulated plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant must not climb ladders or stairs and must have a sit/stand option. The claimant can perform simple, unskilled work and tolerate changes in the work setting that are introduced slowly and infrequently.

*Id.* at 26, R. 25. At step four the ALJ determined that plaintiff "is unable to perform any past relevant work[.]" *Id.* at 32, R. 31. At step five, based on the plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" *Id.* Accordingly, the ALJ determined that plaintiff "has not been under a disability . . . from December 31, 2014, through the date of [the ALJ's] decision[.]" *Id.* at 33, R. 32.

## IV. Issues on Appeal

On appeal, plaintiff argues that the ALJ's RFC determination and his determination at step five, based on the VE's testimony, are not supported by substantial evidence because the ALJ failed to include limitations from plaintiff's cubital tunnel syndrome in his RFC assessment and in the hypothetical question he posed to the VE in making his decision.

## V. Discussion

Plaintiff argues that this case should be reversed or remanded because the ALJ failed to include manipulative limitations associated with plaintiff's cubital tunnel syndrome in reaching, handling, fingers, or feeling restrictions, despite medical evidence from multiple medical providers leading up to, and in conjunction with, her diagnosis of cubital tunnel syndrome which included limitations to fine and gross manipulation, findings of weakness and pain in the upper extremities and decreased dexterity and speed in fine motor tasks, ulnar nerve issues in her cubital tunnel, and occasional small finger numbness. Plaintiff maintains that the ALJ's RFC indicates, contrary to the medical evidence, that she is unrestricted in each of these areas and can perform these activities continuously over the course of an eight-hour day. *See* Doc. 12 at 6-8. Plaintiff also argues that because the ALJ relied on the testimony of the VE which was responsive to a hypothetical question that did not include any manipulative limitations, the ALJ's decision is unsupported by substantial evidence.

The Commissioner argues that the ALJ properly considered the medical evidence regarding plaintiff's cubital tunnel syndrome and addressed any related limitations by limiting plaintiff to the minimal lifting and carrying of sedentary work. Doc. 13 at 6. The Commissioner contends that Plaintiff failed to meet her burden of offering sufficient evidence to support her subjective complaints of disabling symptoms and limitations and that the objective medical evidence provides substantial evidence to support the ALJ's decision. *Id.* at 6-7.

1.   RFC Determination

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946(c). Such "assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546). The ALJ, not the physician, is charged with assessing a claimant's RFC at the administrative level. *See* 20 C.F.R. §§ 416.927(d)(2), 416.946(c); *see also Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (finding that ALJ "properly carried out his regulatory role as an adjudicator responsible for assessing [the plaintiff's] RFC"). The determination of a claimant's RFC is an administrative assessment, not a medical one, and the final responsibility for assessing a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3), 416.946(a); SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996); *Castle*, 557 F. App'x at 853. Although an ALJ may not make medical findings, *see Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992), it is the ALJ's responsibility to resolve conflicting medical opinions and evidence. *See Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). The ALJ, "as the factfinder, does not need an opinion from a treating or examining doctor concerning a claimant's functional limitation[s] in order to make a finding regarding a claimant's RFC." *Williams v. Astrue*, 2008 U.S. Dist. LEXIS 12010, at *15 (M.D. Fla. Feb. 18, 2009). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). It is not this court's role to reweigh the evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To

8

the extent that [the plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (internal quotations and footnotes omitted).

The ALJ found plaintiff's cubital tunnel syndrome to be a severe impairment which limits her to sedentary work. *See* Doc. 14-2 at 24, 28, R. 23, 27. To reach a determination regarding plaintiff's RFC, the ALJ considered plaintiff's testimony that she stopped working because of cramping and swelling in her hands, pain in her hand that radiates up to her elbow, a brace on her right hand worn for carpal tunnel issues, an inability to cook because she drops items easily due to weakness in her hands, difficulty opening jars and doors with her hands, and ability to clean only for short periods. *Id.* at 27, R. 26. After hearing plaintiff's testimony and reviewing the record, the ALJ found that "claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ determined that "the objective medical evidence, the claimant's treatment history, her lack of side effects from medication, and her activities of daily living do not fully support her allegations about the severity of her symptoms." *Id.*

Examining the record evidence related to plaintiff's activities of daily living, the ALJ found that plaintiff's "full range" of activities of daily living was inconsistent with her allegations of disability because the record showed that plaintiff was able to live independently, to function as the primary caretaker of her daughter, and "to perform her

9

own personal care, prepare meals, wash laundry, and do housework when her hands are not bothering her." Doc. 14-2 at 27-28, R. 26-27.

Examining the record evidence related to plaintiff's cubital tunnel syndrome, the ALJ noted that the diagnosis was confirmed with electromyography, which showed a right ulnar motor nerve conduction block of 50 to 75 percent; a positive Tinnel's test later followed by a negative Tinnel's test; a negative carpal tunnel compression test and intact motor function in both hands; a full range of motion in her shoulders, elbows, and wrists, no atrophy in both hands; and a prescription for a right wrist brace to treat her symptoms. Doc. 14-2 at 29, R. 28. Reviewing the medical record evidence more generally, the ALJ observed that musculoskeletal findings showed that plaintiff had full range of motion in all her joints, that physical exam findings showed that the plaintiff maintained full strength in all extremities, and that plaintiff neither presented in acute distress nor reported any side effects of medication. *Id.* at 28, R. 27.

The ALJ also reviewed the medical opinions of Bonnie Dungan, M.D., who said that "claimant could occasionally lift up to five pounds and alternate standing and sitting every hour," and that "claimant could rarely push and pull," and "occasionally perform fine and gross manipulation." Doc. 14-2 at 31, R. 30. However, the ALJ only gave partial weight to Dr. Dungan's opinions, "because even though she is the claimant's treating source, her opinions are only partially consistent with the record as a whole, which shows the claimant is not as limited as Dr. Dungan opined."

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232,

1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the ALJ chooses to disregard the opinion of a treating physician, he or she must "clearly articulate" the reasons for doing so. *Id.*; *see also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); 20 C.F.R. § 404.1527(c)(2) ("good reasons" must always be given in the decision for the weight given to a treating source's medical opinion). "[G]ood cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Failure to articulate clearly the reasons for giving less weight to a treating physician's opinion is reversible error. *See Lewis*, 125 F.3d at 1440. Multiple factors must go into the ALJ's weighing of a medical opinion:

> [T]he Social Security regulations command that the ALJ consider (1) the examining relationship; (2) the treatment relationship, including the length and nature of the treatment relationship; (3) whether the medical opinion is amply supported by relevant evidence; (4) whether an opinion is consistent with the record as a whole; and (5) the doctor's specialization. Non-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence.

*Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260 (11th Cir. 2019) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam); 20 C.F.R. § 404.1527(c)).

In the instant case, the ALJ's determined that the treating physician's opinion was not supported by the evidence. Specifically, the ALJ stated that

> there is no evidence that the claimant is limited to lifting only five pounds or can only occasionally perform fine and gross manipulation. In fact, objective findings show the claimant's shoulders, elbows, and wrists had full range of

11

motion with no atrophy in either hand and she had a negative carpal tunnel compression test bilaterally and intact motor function."

Doc. 14-2 at 31, R. 30. The ALJ's finding that Dr. Dungan's medical opinion that plaintiff was limited to lifting only five pounds and occasional fine and gross manipulation was not bolstered by evidence was supported by good cause.

The ALJ's decision clearly demonstrates that he considered evidence of plaintiff's cubital tunnel syndrome and that "the residual functional capacity assessment accounts for the claimant's cubital tunnel syndrome because it limits her to sedentary work." Doc. 14-2 at 29, R. 28. The ALJ considered plaintiff's testimony together with evidence of her activities of daily living and objective medical evidence related to her cubital tunnel syndrome. Based on the above findings, the court finds that substantial evidence supports the ALJ's finding that plaintiff has the residual functional capacity to perform sedentary work with the exception of climbing ladders or stairs, and including a sit/stand option.

2.  Hypothetical Question Posed to the Vocational Expert

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must post a hypothetical question which comprises of all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)) (internal quotations omitted). The question posed to the VE must "include or otherwise implicitly account for" all of a claimant's impairments. *Id.* at 1181; *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (per curiam) ("questions that 'implicitly account[] for the claimant's limitations' are sufficient to meet this requirement") (citing *Winschel*, 631 F.3d at 1180-81). "An ALJ is not required to include findings in a hypothetical question that the ALJ properly rejected

as unsupported." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (per curiam) (citing *Crawford*, 363 F.3d at 1161).

Based on plaintiff's testimony and that medical record, the VE testified that a hypothetical individual of plaintiff's age, education, and work history, limited to sedentary work with "occasionally lifting ten pounds and frequently ten pounds [sic]," never climbing ladders or stairs, with a sit/stand option, and with changes in the work setting being introduced slowly and infrequently, would be unable to perform any of plaintiff's past work, but that such individual would be able to work as a surveillance system monitor, a charge account clerk, a quotation clerk, and assembly inspector. Doc. 14-2 at 62-64, R. 61-63.

Plaintiff contends that the ALJ relied on an incomplete hypothetical posed to the vocational expert "[b]ecause the ALJ's RFC did not properly incorporate the requisite limitations." However, as discussed above, the ALJ properly considered plaintiff's cubital tunnel syndrome, including plaintiff's testimony and medical record evidence, which documented plaintiff's complaints, diagnoses, and treatments, in determining that plaintiff was able to complete the full range of sedentary work with the inclusion of a sit/stand option and with limitations on climbing ladders or stairs. By posing a hypothetical question to the VE which included those limitations, the ALJ implicitly accounted for all of plaintiff's impairments. The ALJ was not required to include any manipulative limitations, such as reaching, handling, fingers, or feeling, that he found unsupported. Therefore, the ALJ offered a hypothetical question sufficient for him to make a finding regarding

plaintiff's ability to perform the jobs suggested by the VE. The ALJ's decision is supported by substantial evidence.

The court is mindful that it is not its role to reweigh the evidence or substitute its judgment for that of the ALJ. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Although Plaintiff has pointed to evidence in the record that she contends supports a different result, this is insufficient to warrant remand. *See Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 671 (11th Cir. 2017) (The court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."). The court discerns no legal error in the ALJ's consideration of the evidence of record or in his explanation of the decision. Accordingly, because the Commissioner's decision is supported by substantial evidence and the proper legal standards were applied, the court will affirm the ALJ's decision.

## VI. Conclusion and Order

Upon consideration of the parties' briefs and record, the court concludes that the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be affirmed by a separate judgment.

In addition, it is

**ORDERED** that the plaintiff's motion for an award of EAJA fees is **DENIED**. *See* Doc. 12.

Done, on this the 30th day of September, 2020.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge